WALTER G. WINNE, PLAINTIFF, v. THE COUNTY OF BERGEN, A BODY POLITIC AND CORPORATE OF THE STATE OF NEW JERSEY, DEFENDANT.

Bergen County Court
Law Division

Decided August 1, 1955.

536

*Mr. Edward R. McGlynn* appeared for plaintiff (*Messrs. McGlynn, Weintraub and Stein,* attorneys).

*Mr. Milton T. Lasher,* attorney for defendant.

O'DEA, J. C. C. The plaintiff and the defendant by motion and cross-motion respectively each seek summary judgment on the pleadings and stipulation of fact.

The plaintiff was duly re-appointed County Prosecutor of Bergen County on April 25, 1949 for a term of five years under the New Jersey *Constitution of 1947* (*Art.* VII, § II, *par.* 1) at a statutory annual salary of $10,000 as fixed by resolution of and payable by the Board of Freeholders of the County of Bergen in semi-monthly installments on the fifteenth and last lay of each month under *R. S.* 2:182–10 and 11, and *N. J. S. A.* 2A:158–10 and 13.

After the plaintiff had qualified and entered upon the discharge of the duties of the office, the Board of Freeholders of Bergen County on finding that an investigation of the Attorney-General of the State of New Jersey, made since October 20, 1950 when the Attorney-General had assumed jurisdiction in Bergen County over the investigation and prosecution of gambling activities, disclosed that a larger staff from the Attorney-General's office was necessary to prosecute the criminal business of the county, determined it would be wise for the State to assume full responsibility for the operation of the office of county prosecutor, thereupon, on December 1, 1950, adopted the following resolution:

"NOW THEREFORE BE IT RESOLVED, that the Attorney-General of the State of New Jersey be requested in writing by the Board of Chosen Freeholders of the County of Bergen to assume immediately the full responsibility for the prosecution of all criminal business in this County.

BE IT FURTHER RESOLVED, that the Attorney-General of the State of New Jersey be advised that all personnel and facilities of the County, of which he wishes to avail himself, shall be placed at his disposal to the end that justice will be served without fear or favor in an expeditious and thorough investigation of gambling and related matters."

A copy of the resolution was delivered to the plaintiff in the county prosecutor's office at 4 P. M. on December 1, 1950. At 5 P. M. the same day an Assistant Attorney-General took complete possession of the county prosecutor's offices, files,

cabinets and desks to the exclusion of the plaintiff and retained such exclusive possession thereof, investigating and prosecuting therefrom all the criminal business of the county through the end of the term of office of the incumbent plaintiff, April 25, 1954.

During this period plaintiff performed no services as county prosecutor and received no salary.

Plaintiff seeks recovery from defendant of his salary as county prosecutor for the period December 1, 1950 to April 25, 1954 amounting in the aggregate to $34,005.32.

Defendant denies plaintiff continued to hold the office of county prosecutor through the period December 1, 1950 to the end of the appointed term; denies plaintiff performed all the obligations and conditions precedent to compensation and asserts by way of four separate defenses that: (1) there is no contractual or statutory duty on the defendant to pay plaintiff for services not rendered; (2) plaintiff was superseded as county prosecutor by the Attorney-General during the period and having performed no services as county prosecutor during such period failed to fulfill such condition precedent to his right to receive the salary of the office; (3) plaintiff failed to test or set aside the action of the Attorney-General superseding him as county prosecutor and is therefore estopped from asserting, and waived, any claim to salary or compensation for the period; (4) the complaint fails to state a claim on which relief can be granted.

 The office and term of county prosecutor are created and fixed by the Constitution which provides that county prosecutors shall be nominated and appointed by the Governor with the advice and consent of the Senate for a term of five years. *N. J. Const.* 1947, *Art.* VII, § II, *par.* 1. The office and term of a constitutional public officer may be terminated only by impeachment (*N. J. Const.* 1947, *Art.* VII, § III), resignation, death of the incumbent, or by forfeiture for conviction of a crime touching the administration of the office or which involves moral turpitude (*R. S.* 2:160–9, *N. J. S. A.* 2A:135–9). Therefore, plaintiff's title to and term of office were not disturbed by the action of the defendant requesting

the Attorney-General to assume the administration of the criminal business of the county under the resolution of December 1, 1950. The Legislature could not by such method vacate an office created under the Constitution. *State v. Wrightson*, 56 *N. J. L.* 126 (*Sup. Ct.* 1893); *Imbrie v. Marsh*, 3 *N. J.* 578 (1950). There was no vacancy created in the office of county prosecutor by the action of the board of freeholders. The presence of the Attorney-General in the county was not as an appointed county prosecutor but in his capacity as Attorney-General under statutory direction which was not incompatible with the office of prosecutor. The fact is, he was not assuming to act as the prosecutor. He was discharging his statutory duty as Attorney-General in performing the work that is ordinarily performed by the prosecutor. *State v. McFeeley*, 136 *N. J. L.* 102 (*Sup. Ct.* 1947).

The salary of the county prosecutor during the term of office, including that part of any such term when the Attorney-General is performing the duties of the office, is expressly fixed and regulated by statute. *R. S.* 2:182–10 and 11, and *N. J. S. A.* 2A:158–10 and 13 both provide that the prosecutor shall receive an annual salary within minimum and maximum amounts to be fixed by resolution of the board of freeholders of the county and paid at the same times and in the same manner as other county salaries are paid. The annual salary so established by the Legislature to be paid by the board of freeholders of the county to the incumbent is a legal and binding obligation of the county to the office holder. *Delmar v. Bergen County*, 117 *N. J. L.* 377 (*E. & A.* 1936); *Orlando v. Camden County*, 132 *N. J. L.* 173 (*Sup. Ct.* 1944).

The Legislature has further provided what effect compensation paid to the Attorney-General for performance of the duties of the prosecutor shall have upon the salary provided for the latter, and the time of payment thereof during the administration of the criminal business of the county by the Attorney-General. Under *R. S.* 52:17A–5 authorizing the Attorney-General to take over the duties of the county prosecutor the Legislature expressly provides:

"Whenever the criminal business * * * of any county is prosecuted by the Attorney-General * * * there shall be paid, by the treasurer of the county, such sum for that special service as the assignment judge of the Superior Court of the county or a judge of the County Court of said county shall certify and fix, on the application of the Attorney-General, * * * provided however, that *no compensation so allowed shall affect the salary of the county prosecutor* or assistant prosecutors if any in said county * * *."

The Legislature has further provided for payment of the salary of the county prosecutor during the attendance of the Attorney-General on the duties of the office of the prosecutor. *R. S.* 2:182–12; *N. J. S. A.* 2A:158–14 both provide where the attendance of the Attorney-General shall continue for a period of more than three months, the payment of the salary to the prosecutor shall be suspended after such three months period and until the attendance of the Attorney-General shall have terminated and the prosecutor shall have resumed the discharge of his duties. The earlier statute *R. S.* 2:182–12, expressly provided, "When the period of suspension of payment has ended, the total amount of such salary or other compensation held in suspense shall be paid to the prosecutor of the pleas." This clause was omitted from the re-enactment under *N. J. S. A.* 2A:158–14 and defendant relies on this omission as an expression of the intent of the Legislature that for the period of suspension of payments of salary, as provided in the statute, the salary of the prosecutor is suspended.

In construing a particular statute, or in the interpretation of its provisions, all statutory enactments relating to the same subject, or having the same general purpose, should be read in connection with it as together constituting one law although each may have been enacted at different times and contain no specific reference to one another. *In re Book's Will*, 90 *N. J. Eq.* 549 (*E. & A.* 1919); *Hackensack Water Co. v. Ruta*, 3 *N. J.* 139 (1949); *Goff v. Hunt*, 6 *N. J.* 600 (1951); *Horwitz v. Reichenstein*, 15 *N. J.* 6 (1954).

The seven statutes on the subject of the salary of the prosecutor and manner of payment thereof during the term of

office and any part of the term when the Attorney-General attends the administration of the criminal business of the county are *in pari materia*. Therefore these seven statutes should be read together in construing the intent of the Legislature in respect to suspension of payments of salary during the period. By separate enactments the Legislature has expressly provided for the fixed annual salary of the prosecutor. *R. S.* 2:182–10, *N. J. S. A.* 2A:158–10. By separate enactments it has provided for the time of payment of the salaries. *R. S.* 2:182–11, *N. J. S. A.* 2A:158–13. It has expressly provided that the salary of the prosecutor shall not be affected by the compensation paid the Attorney-General. *R. S.* 52:17A–5. And it has provided for time of payment of the salary while the Attorney-General is in attendance. *R. S.* 2:182–12, *N. J. S. A.* 2A:158–14. Taken together the intention of the Legislature is clear that the annual salary of the prosecutor shall be paid for the period the Attorney-General attends his duties with merely a suspension of payment during that period after the first three months only. The statutes clearly disclose by their expressed provisions that the Legislature had in mind dual compensation for two officers for services performed by one. If the provisions for suspension of payments were construed to mean suspension of salary rather than suspension of payments only, then the express provision that the compensation of the Attorney-General shall not affect the salary of the prosecutor would be meaningless. If by the omission of the express provision directing payment of the suspended payments to the prosecutor in the re-enactment of *R. S.* 2:182–12 under *N. J. S. A.* 2A:158–14 the Legislature intended to suspend, abridge or impair the salary of the prosecutor during such period, it would be reasonable to look for an amendment to *R. S.* 52:17A–5 for legislative expression of such intent. There was no such amendment. And *R. S.* 52:17A–5 was subsequently amended (*L.* 1953, *c.* 49, *p.* 859, *sec.* 22) without any change in the provision that the salary of the prosecutor shall not be affected by compensation paid the Attorney-General for the performance of the duties of the prosecutor. There is no support under

the statutes nor under the law for inferential or implied repeal of that provision. *Ruckman v. Ransom,* 35 *N. J. L.* 565 (*E. & A.* 1871); *Goff v. Hunt, supra.*

The Supreme Court gave some consideration to the construction of these statutes relating to the suspension of payments of the salary of a prosecutor in *State v. Winne,* 12 *N. J.* 152 (1953) when the Chief Justice delivering the majority opinion of the court said at page 172:

"The two statutes above referred to [*R. S.* 2:182–12 and *N. J. S. A.* 52:17A–5] do not contemplate the removal of the county prosecutor, but merely his suspension. Indeed, under *R. S.* 2:182–12, *N. J. S. A.,* his salary is not suspended for the first three months that the Attorney-General takes over his duties, and the balance of his salary is payable at the termination of the attendance of the Attorney-General. *N. J. S. A.* 52:17A–5 is even more favorable to the county prosecutor in providing 'that no compensation so allowed (to the Attorney-General) shall affect the salary of the prosecutor or assistant prosecutors.' "

A strict construction of *N. J. S. A.* 2A:158–14 that would abrogate the salary of the prosecutor during the administration of the Attorney-General would defeat the apparent purposes of the other statutes relating to the salary and therefore should not be followed. A statutory clause should not be so construed as to make the clear intention of the Legislature as expressed in the whole act, and the enactments *in pari materia* nugatory. *State v. McCall,* 14 *N. J.* 538 (1954).

Thus by constitutional provision creating the office and tenure, and legislative enactments providing for the salary thereof during the term and providing for the performance of the duties of the office by the Attorney-General, his compensation therefor, and the salary and payments thereof to the prosecutor during the administration of the duties of the prosecutor by the Attorney-General it is clear the plaintiff continued to hold the office during the incumbency of the Attorney-General to the end of his constitutional term April 25, 1954, and the performance of the duties of the office of the county prosecutor by the plaintiff under the

circumstances of the disputed period, all expressly provided for by statute, was not a condition precedent to the claim for such salary, as urged by the defendant in the answer.

Whether the salary of a public officer is an incident of title to the office unaffected by any diminution of the duties, or failure to perform the duties of the office through no fault of the incumbent, as held in *Bennett v. City of Orange*, 69 *N. J. L.* 176 (*Sup. Ct.* 1903), affirmed 69 *N. J. L.* 675 (*E. & A.* 1903) ; *Jardot v. City of Rahway*, 2 *N. J. Misc.* 742 (*Sup. Ct.* 1924) and *Hefter v. Bradway*, 115 *N. J. L.* 81 (*Sup. Ct.* 1935), or the right to emoluments in public office has no legal existence except as arising out of the rendition of the services for which they are compensatory, as held in *Hoboken v. Gear*, 27 *N. J. L.* 265 (*Sup. Ct.* 1859) ; *Hillel v. Borough of Edgewater*, 106 *N. J. L.* 481 (*Sup. Ct.* 1930) and *Sganga v. Teaneck*, 130 *N. J. L.* 218 (*Sup. Ct.* 1943) is not clear under the decisions of this State. The principle followed by the majority of the other jurisdictions appears to be as stated by Justice Brandeis in *MacMath v. United States*, 248 *U. S.* 151, 39 *S. Ct.* 31, 32, 63 *L. Ed.* 177 (1918) :

> "When an office with a fixed salary has been created by statute, and a person duly appointed to it has qualified and entered upon the discharge of his duties, he is entitled during his incumbency to be paid the salary prescribed by statute; and effect will not be given to any attempt to deprive him of the right thereto, whether it be by unauthorized agreement, by condition, or otherwise."

However, there is a unanimity of opinion in this State, and other jurisdictions, for the rule respecting payment of salaries to public officers for periods of tenure during which no services were performed by the incumbent which provides that the Legislature, unless otherwise restricted by the Constitution, may provide for the payment in full of the salary or compensation provided by law to public officers during periods of tenure when they did not perform the duties of the office through no fault of their own. *Jardot v. City of Rahway*, 3 *N. J. Misc.* 201 (*Sup. Ct.* 1925) ; *Ratajczak v. Board of Education of Perth Amboy*, 118 *N. J. L.* 311

(*Sup. Ct.* 1937); *Bodnar v. Board of Health of Carteret*, 15 *N. J. Misc.* 279 (*Sup. Ct.* 1937); *Strohmeyer v. Borough of Little Ferry*, 6 *N. J. Super.* 282 (*App. Div.* 1950); *United States v. Andrews*, 240 *U. S.* 90, 36 *S. Ct.* 349, 60 *L. Ed.* 541 (1916).

Therefore, where the statutory salary of a public officer is provided by legislative enactment, and payment of the salary to the incumbent during the period of administration of the office by another is sanctioned by statute, the statutory salary of the incumbent for such period of absence from the duties of the office may be recovered though no services were rendered.

Since the Attorney-General assumed the duties of the office under the provisions of the statute on written request by appropriate resolution of the board of freeholders and suspension of payments of salary to the prosecutor were done according to law as specifically provided in such cases by statute, there was no illegal usurpation or dismissal from office, nor illegal withholding of salary, except for the short term of the first three months of the period, for the plaintiff to test his title to the office or right to the salary incident thereto during the period December 1, 1950 to April 25, 1954. Therefore, the plaintiff is not estopped to assert his title to the office during the period nor does his failure to assert the claim to the lawfully suspended payments of salary during the period of suspension constitute a waiver thereof. *Keegle v. Hudson County*, 99 *N. J. L.* 26 (*Sup. Ct.* 1923).

There was no question of the legality of the action of the Attorney-General assuming the duties of the office, nor the county treasurer suspending the payments of salary, after the first three months, to be determined as a condition precedent to this action for the salary for the entire period. *Van Sant v. Atlantic City*, 68 *N. J. L.* 449 (*Sup. Ct.* 1902).

Neither estoppel, waiver nor abandonment are available as defenses to the claim because one of the essential elements of estoppel is that the party who seeks the benefit of it must have relied on the representations or conduct of the other party and thereby have been led into a course of

conduct whereby he would be substantially prejudiced if the other party were permitted to repudiate his former action or representation, while waiver is an intentional abandonment or relinquishment of a known right, and abandonment of a public office must be an intentional, total and absolute relinquishment. Temporary absence from duty upon lawful exclusion and performance of the duties by another is not sufficient to sustain an estoppel, waiver or abandonment. *Smith v. National Commercial Title & Mortgage Guaranty Co.*, 120 *N. J. L.* 75 (*E. & A.* 1937); *Tumen v. County of Monmouth*, 16 *N. J. Misc.* 294 (*Sup. Ct.* 1938); *Vanderbach v. Hudson County Board of Taxation*, 133 *N. J. L.* 126 (*E. & A.* 1945).

For the reasons stated the motion of the plaintiff for summary judgment in the sum of $34,005.32 is granted and the cross-motion of the defendant is denied.