181 N.J. Super. 61 (1981)
436 A.2d 564
THOMAS LEVIN, PLAINTIFF,
v.
WOODBINE BOROUGH COUNCIL, A MUNICIPAL GOVERNING BODY OF A BOROUGH LOCATED IN THE COUNTY OF CAPE MAY, STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Law Division Cape May County.
Decided June 18, 1981.
*63 Stephen W. Barry for plaintiff (Middlesworth, Beakley & Barry, attorneys).
James A. Waldron for defendant (Rubins & Waldron, attorneys).
STALLER, J.S.C.
Plaintiff Thomas Levin has moved for summary judgment seeking, among other things, an order to reinstate him as mayor of Woodbine. Defendant Woodbine Borough Council (council) has filed a cross-motion to dismiss all counts of plaintiff's complaint.
Levin was elected to the office of mayor of Woodbine and took office in January 1979. Woodbine is a municipality created pursuant to, and governed by, the Borough Act, now known as N.J.S.A. 40:86 et seq. It is stipulated that in June 1979 Levin notified the president of the council of his intended absence from the borough for more than three days.
Although Levin was present at the meeting of the council on June 6, 1979, he thereafter was absent until August 16, 1979, at which time he did attend a council meeting. He thus absented himself for ten consecutive weeks, during which period council meetings were held on June 21, July 3, July 9, July 17 and August 7.
No action was taken by council with regard to Levin's absence from his mayoral duties in 1979 by way of excusing him from attending and participating in meetings, despite the then recent enactment of the Municipal Vacancy Law, N.J.S.A. 40A:16-1 et seq., effective April 26, 1979.
Levin similarly absented himself during the summer of 1980. He did attend a meeting of council on May 12, 1980, but thereafter did not attend or participate in another meeting *64 through August 1980. However, on June 13, 1980 he sent a letter to the president of council which reads as follows:
 BOROUGH OF WOODBINE
 WOODBINE, NEW JERSEY
 08270
 6/13/80
 Mr. "Ern" Materio
 Frederick
 Woodbine NJ 08270
Dear "Ern":
In accordance with NJS 40:88-3 I hereby notify you of my intended absence from the borough for more than three days at any one time, beginning today.
 Very truly yours,
 Thomas M Levin
 Mayor
Despite such notification, however, it is undisputed that, as of August 5, 1980, Levin had failed to attend a meeting for 12 consecutive weeks. Indeed, in an affidavit submitted by him he says that the next meeting in which he attempted to attend after May 12 was in early September. During this period regular meetings were scheduled for May 15, June 5, June 19, July 1, July 17, August 5, August 21 and September 2. All were held with the exception of the one on May 15, which was cancelled because of the absence of a quorum. (Had Levin been in attendance, the meeting could have progressed and borough business could have been conducted.) Special or emergency meetings during this same period were held on July 3, July 15 and August 8.
At the regular meeting of the council held on August 5, 1980, Resolution 57-1980 was adopted. It declared that because the mayor had failed to attend and participate in meetings of the governing body for eight consecutive weeks without having first been excused, the office of mayor was deemed vacant and that the president of council was to become acting mayor pending filling of the office at the general election in November, 1980.
*65 The council acted pursuant to the Municipal Vacancy Law, N.J.S.A. 40A:16-1 et seq. This law defines mayor as "the person elected to that office at large by the voters of the municipality." N.J.S.A. 40A:16-2(c). Municipality is defined as "any village, borough, town, township or city of this State." N.J.S.A. 40A:16-2(d) (emphasis supplied). The provisions of this law are applicable to the Borough of Woodbine, and it was pursuant to N.J.S.A. 40A:16-3 that the council acted. This section of the law provides:
The office of a mayor or a member of the governing body of a municipality shall be deemed vacant:
........
(g) Whenever the mayor, when required by law to attend meetings of the governing body, ... fails to attend and participate in any meetings of the governing body for a period of 8 consecutive weeks without being excused from attendance by a majority of the members of the governing body, at the conclusion of such period; provided, however, that the governing body may refuse to excuse only with respect to those failures to attend and participate which are not due to legitimate illness; ... [Emphasis supplied]
On September 22, 1980 Levin filed a complaint in lieu of prerogative writs. He seeks to have Resolution 57-1980 declared null and void, to be reinstated as mayor of the borough and to have his back salary paid to him. The thrust of his complaint is that he is not required by law to attend meetings and therefore no grounds existed pursuant to the above-quoted statutory provision to declare his office vacant.
Levin also alleges in the fourth count of the complaint that he is a school teacher who customarily takes an extended vacation during the summer months, and that, in fact, upon his return during the summer of 1979, during which period he was absent for more than eight consecutive weeks, he was not advised that he was in violation of the Municipal Vacancy Law, and his office was not declared vacant. He therefore asserts that he had the right to rely, in 1980, upon the prior accepted practice in the borough of taking an extended vacation. It is further alleged that the absence of the mayor in no way restricts the governing body's ability to function and that there is no relationship *66 between Levin's performance of his duties as mayor and the obligation to attend meetings. Defendant council, by answer, denied the principal allegations of the complaint and contends that there is a duty imposed upon the mayor to attend meetings, and consequently N.J.S.A. 40A:16-3 is directly applicable.
After discovery process was completed Levin moved for summary judgment seeking to require the council to reinstate him as mayor, relying on R. 4:69-2 which provides that "If the complaint demands the performance of a ministerial act or duty," plaintiff may so move. At the hearing for this motion defendant conceded that there was no genuine issue as to any material fact, but that as a matter of law plaintiff was not entitled to prevail. Defendant sought, and was granted, leave to file a counter-motion for summary judgment.
This matter is now ripe for determination as to the major issues presented. While there are counts in the complaint charging that the Resolution 57-1980 was not carried with a sufficient number of votes (second count); that a resolution which adopted by-laws governing the conduct of meetings was improper in limiting the powers of the mayor (third count), and that the salary resolution which reduced the mayor's salary 50% was likewise improper (fifth count), these need not be considered for the purposes of the resolution of the motions before the court, unless it is determined that plaintiff must be reinstated as mayor of defendant borough.
Levin contends that N.J.S.A. 40A:16-3(g) has no relevance herein because, as mayor of the borough, he is not required to attend meetings and therefore his absence for eight consecutive weeks without being excused from attendance did not create a vacancy.
The relationship of the borough mayor and the council is specifically set forth in N.J.S.A. 40:88-1:
The mayor and councilmen of every borough shall constitute the council thereof.
They shall hold an annual meeting... The mayor shall, when necessary, call special meetings of the council; ...
Three councilmen and the mayor, and, in the absence of the mayor, four councilmen shall constitute a quorum...

*67 The mayor shall preside over all meetings except as herein in this article otherwise provided, but shall not vote except to give the deciding vote in case of a tie. [Emphasis supplied].
It can readily be seen from this provision of the statute that a duty is imposed on the mayor to preside over all meetings. To argue to the contrary in light of the language therein employed ("shall preside") is specious. Having ascertained the existence of such duty, the next question is whether Levin's actions fall within any recognized exception so as to excuse his failure to attend.
N.J.S.A. 40:88-3 provides:
If the mayor is absent from the borough for a period of three days or for any reason is unable to act, the president of the council shall perform all the duties of the mayor during such absence or inability. The mayor, in case of his intended absence from the borough for more than three days at any one time, shall notify the president in writing of such intended absence, whereupon the president shall be and become acting mayor from the receipt of such notice and continue to act until the mayor's return....
No time limitation under N.J.S.A. 40:88-3 is placed upon the extent to which a mayor, duly elected at large by the electorate of the borough, may absent himself, nor is there any time limit imposed upon the term that the president of council, as acting mayor, is to serve after he receives notice that the mayor intends to be absent. Conceivably, the mayor, after being elected at large by the voters, could give the requisite notice under this statute and thereafter absent himself for the remainder of his entire term of four years. N.J.S.A. 40:87-9. Certainly, the Legislature could not have intended such an absurd possibility, yet there was no answer to this problem until the enactment of N.J.S.A. 40A:16-1 et seq.
The present Municipal Vacancy Law is most explicit and sets forth the several circumstances when the office of a mayor shall be deemed vacant. N.J.S.A. 40A:16-3. On the occurrence of any one of these circumstances the office of mayor becomes vacant by operation of law, and explicit provisions in the act are set forth as to the manner of filling the vacant office, and for how long it shall be filled, and how the important office of the *68 mayor shall be conducted temporarily until the new vacancy is filled. See, generally, the several sections at N.J.S.A. 40A:16-4 et seq.
Having concluded that the Borough Act does impose upon a mayor a duty to attend the meetings of council, unless otherwise excused, there can be no question that N.J.S.A. 40A:16-3(g) is both readily applicable to and directly dispositive of the primary issue posed herein. This provision places a direct limitation upon the otherwise unlimited amount of time during which the mayor may absent himself under N.J.S.A. 40:88-3. In order for a mayor to stay away for eight or more consecutive weeks and fail to attend and participate in any meeting during such period, he must be expressly excused from attendance by a majority of the members of the governing body.
A question is raised as to the operative date on which the eight consecutive week period is to begin to run. Various possibilities suggest themselves, including May 12, the date on which Levin last attended a meeting; May 15, the date on which a meeting was scheduled but not held because of a lack of a quorum; June 5, the date on which a regularly scheduled meeting was held, and June 13, the date on which Levin submitted a letter to the council president announcing his intended absence for more than three days. N.J.S.A. 40A:16-3 is silent with respect to this particular question.
When confronted with an issue whose resolution requires the interpretation of a statute, the initial task for any court is to discern and to effectuate the intent of the Legislature. State v. Madden, 61 N.J. 377, 389 (1972); Maros v. Transamerica Ins. Co., 143 N.J. Super. 307, 311 (Law Div. 1976). An investigation of the purpose of the Municipal Vacancy Law must necessarily begin with reference to the Municipal Governing Body Vacancy Law, (N.J.S.A. 40:45B-1 et seq., which was repealed and replaced by N.J.S.A. 40A:16-1 et seq.), for such was the predecessor to the present statute and was the law in which the language of N.J.S.A. 40A:16-3(g) first appeared. The Statement accompanying *69 Senate Bill 419, which was ultimately enacted as the Municipal Governing Body Vacancy Law, includes the following:
[This] Section ... of the Bill is generally a consensus of the various statutes in which vacancies are defined, except for subsection g, which is new. This has been proposed as a result of reported instances where members have deliberately refused to attend meetings or have been forbidden by the court to participate because of a conflict of interest which only the member can resolve. When such absentation is uncontrolled, the public interest can be frustrated.
The legislators clearly viewed prolonged absences of members of municipal governing bodies with obvious disfavor and thereby sought to discourage an unbridled indulgence in them. By force of this law an official who intended to be absent from meetings during any eight consecutive week period was expressly required to secure approval therefor. Levin, in his affidavit, admits that the last meeting he attended was on May 12 and thereafter did not appear again until September 2. N.J.S.A. 40A:16-1 et seq. was designed to militate against precisely such conduct.
A reference to the statements accompanying Senate Bill 1217 (was ultimately enacted as the Municipal Vacancy Law and replaced N.J.S.A. 40:45B-1 et seq.) indicates a clear legislative intent to extend the provisions of law embodied in the former statute regarding vacancies to embrace not only municipal governing bodies but mayors elected at large as well. The foremost guiding principle of this successor statute is that vacancies are to be filled as quickly as possible. At the expiration of the earliest eight-week period, the office of mayor is deemed vacant.
To accomplish this legislative intent, the eight-week period must begin and did begin to run the day after the mayor last attended a meeting, that is, in this case, May 13.
Further, because it is conceded by Levin himself that he did in fact fail to attend meetings for eight consecutive weeks without having secured permission of council to do so, a declaration that this particular resolution was null and void would not lead to the *70 conclusion that Levin should be reinstated.[1] Resolution 57-1980 was merely a formality which served to memorialize an event that had already occurred by operation of law.
Finally, Levin contends that because he was absent without being excused, for more than eight consecutive weeks during the summer of 1979, and was not thereby removed, the council tacitly approved of such conduct and should thus be estopped from declaring his office vacant in 1980. No authority is cited in support of this position. Indeed, it would be a novel proposition of law to hold that a governing body is estopped from observing and complying with an enactment of the Legislature. A review of the decisions rendered by the courts in this State reveals that application of the doctrine of estoppel would be altogether inappropriate here.
There is not only a pronounced reluctance by the judiciary to apply estoppel principles against governmental agencies, Summer Cottager's Ass'n of Cape May v. City of Cape May, 19 N.J. 493, 503 (1955); Boyd v. Institutions and Agencies Dep't, 126 N.J. Super. 273, 275 (App.Div. 1974), but such application is to occur only where "the interests of justice, morality, and common fairness dictate that course." Anske v. Palisades Park, 139 N.J. Super. 342, 348 (App.Div. 1976). There is nothing unjust, immoral or unfair about the conduct of council in adopting Resolution 57-1980. In doing so the council was effectuating *71 the legislative intent. The inaction of defendant in 1979 can only be regarded as an oversight of a recently enacted state Law. Such inaction cannot be construed to pose a bar forever thereafter to the application of N.J.S.A. 40A:16-1 et seq. to Levin as mayor of Woodbine.
From all of the foregoing it is the determination of this court that the mayor of the Borough of Woodbine was required by law to attend meetings of the governing body, and the failure of Levin as mayor to attend and participate in any meetings of the governing body for a period of eight consecutive weeks without being excused from attendance created a vacancy in the office of mayor at the conclusion of the eight-week period.
The motion for summary judgment in favor of plaintiff is denied. The motion for summary judgment in favor of defendant is granted. No costs.
NOTES
[1] By N.J.S.A. 40A:16-6 a majority vote of the entire governing body is required to make the appointment to fill the vacancy in the office of mayor. By the second count of plaintiff's complaint it is contended that because there was not a majority vote of the entire membership of the governing body, the resolution was not properly adopted. This argument is without merit insofar as the vacancy created in the office of the mayor after his absence for eight consecutive weeks is concerned. The resolution, if it was not adopted by a majority of the governing body, could only be considered of no effect with relation to the designation of the president of council as acting mayor until the next general election. N.J.S.A. 40A:16-4, 5. This issue is moot since no challenge was made to the ability of the president of council to act as mayor in the interim period, and an election was held and a new mayor elected at the next general election.