732 A.2d 1147

PETER CORVELLI, PLAINTIFF, v. ANTONIO FONSECA, MARIA R. BEIRAO, LEONARD D. GILBERT, MATTIE J. HOLLOWAY, KAREN D. MCCOY, JOE PINCKNEY, AND THE TOWNSHIP OF HILLSIDE, DEFENDANTS.

Superior Court of New Jersey
Law Division Union County

Decided March 31, 1999.[1]

---

[1] This is an amplification of an oral bench decision.

*Frank G. Capece,* for plaintiff (*Waters, McPherson, McNeill, P.C.,* attorneys).

*Mark P. Dugan,* for defendants Maria R. Beirao, Mattie J. Holloway, and the Township of Hillside (*O'Connor, Morss & O'Connor, P.C.,* attorneys).

*Raymond S. Londa,* for defendant Antonio Fonseca (*Londa & Londa,* attorneys).

*Bruce H. Bergen,* for defendants Leonard D. Gilbert, Karen D. McCoy, and Joe Pinckney (*Krevsky, Silber & Brown,* attorneys).

BEGLIN, A.J.S.C.

This matter involves interpretation of the Municipal Vacancy Law, *N.J.S.A.* 40A:16–1 *et seq.* as to when a vacancy in an elected office occurs.

Antonio Fonseca ["Fonseca"] was elected to the Hillside Township Council on May 13, 1997, as the Ward 4 Councilperson. He took office on July 1, 1997, for a term of two years, expiring on June 30, 1999.[2]  Plaintiff Peter Corvelli, a registered voter and resident of Ward 4, brought this action seeking a determination that Fonseca's seat on the Council is vacant as a matter of law, due to Fonseca's failure to attend and participate in Township Council meetings for a period of eight consecutive weeks without being excused.[3]

---

[2] Under the Optional Municipal Charter Law (Faulkner Act), *N.J.S.A.* 40:69A–1 *et seq.,* Hillside voters adopted a change in their form of government to the mayor-council plan with the municipal election held on the second Tuesday in May, pursuant to the Uniform Nonpartisan Elections Law, *N.J.S.A.* 40:45–5 *et seq* .

[3] Plaintiff has named each member of the Township Council as a party defendant in this matter.  It must be noted that a number of actions coming before this court seeking relief against governing bodies and boards of municipalities name the individual members of such governing bodies and boards as parties defendant.  This practice is clearly not necessary, and, on the contrary, creates, as we have here, the awkward and unneeded situation in which the municipality and various members of its governing body are represented by different attorneys.  With the exception of Mr. Fonseca, there is no cause of action against the individual members of the Township Council.  Clearly, the members of the Council are bound by decisions rendered in favor of or against

Mr. Fonseca attended a special meeting of the Township Council on December 22, 1998. He then failed to attend the regularly scheduled Council meetings of January 5, January 19, February 16, and March 2, and a special meeting on February 9, 1999, but did attend the meeting of March 16, 1999. If the eight consecutive week period provided in *N.J.S.A.* 40A:16–3(g) began to run on January 5, 1999, in the absence of an excuse granted by the Council, Fonseca's office would have been deemed vacant on March 2, 1999. However, Fonseca and the Township argue that Fonseca appeared at and was ready to participate in two meetings of the Council within the eight week period, both of which were canceled due to lack of a quorum. The first was a regular meeting scheduled for February 2, 1999, and the second was a special meeting scheduled for February 23, 1999. Fonseca was present in the Hillside Municipal Building at about the time of the scheduled beginning of the Council meetings on both of those dates. However, both meetings had been canceled by the Council Vice President, who so instructed the Township Clerk's office so that Council members, the media and the public were so advised in advance of the meetings' starting times. The reason for each cancellation was the absence of a quorum, several members being ill and the Council President himself being hospitalized. It appears that Mr. Fonseca's employment involves significant travel and has increasingly required his presence in Florida and Georgia. On February 2, 1999, and again on February 23, 1999, he flew from Florida to Newark, was met by a friend at the airport, driven home or to the Municipal Building and then later driven back to the airport for his return trip.

The question before the court, therefore, is whether a canceled meeting is an event contemplated by the term "meeting" in *N.J.S.A.* 40A:16–3(g), and, consequently, whether Fonseca's pres-

---

the Township in actions such as this. Thus, the proper parties defendant in this matter are Mr. Fonseca and the Township of Hillside.

ence at the canceled meetings of February 2 and 23, 1999 functioned to interrupt the consecutiveness of the eight week period.

The relevant portion of the Municipal Vacancy Law provides:

The office of ... a member of the governing body of a municipality shall be deemed vacant ...

g. Whenever ... a member of the governing body fails to attend and participate in any meetings of the governing body for a period of 8 consecutive weeks without being excused from attendance by a majority of the members of the governing body, at the conclusion of such period; *N.J.S.A.* 40A:16–3.4

■ There is a preliminary issue that must first be addressed, as to the operative date on which the eight week period set forth in *N.J.S.A.* 40A:16–3(g) began to run. Plaintiff urges that the court apply the formula set forth in *Levin v. Woodbine Borough Council,* 181 *N.J.Super.* 61, 436 *A.2d* 564 (Law Div.1981). There, the Mayor of the Borough of Woodbine brought an action seeking an order reinstating him to that office. The mayor conceded that he had failed to attend meetings of the council for twelve consecutive weeks. Pursuant to the Municipal Vacancy Law, the council adopted a resolution stating that because the mayor had failed to attend and participate in council meetings for eight consecutive weeks without being excused, the office of mayor was deemed vacant.

The court first determined that under the Borough form of government (*N.J.S.A.* 40:88–1 *et seq.*), the mayor is required to attend Borough Council meetings, and therefore § 3(g) of the Vacancy Law was applicable. With regard to the starting date of the eight week period, it was noted that the possibilities included the date on which Levin last attended a meeting, the date on which the next meeting had been scheduled but was not held due to lack of a quorum, and the date on which the following regularly

---

4 The language of the companion statute provides a vacancy in the office of a person *appointed* to "any board, committee, commission, authority or other agency" shall occur when the member without being excused "fails to attend and participate at meetings of such body for a period of 8 consecutive weeks, or for 4 consecutive regular meetings, whichever shall be of longer duration, at the conclusion of such period" *N.J.S.A.* 40A:9–12.1(g).

scheduled meeting was in fact held. In attempting to ascertain the intent of the Legislature, the court examined the very limited legislative history regarding Senate Bill 1217, which was ultimately enacted as the Municipal Vacancy Law, as well as that of its predecessor statute, the Municipal Governing Body Vacancy Law, *N.J.S.A.* 40:45B–1 *et seq.* It was noted with regard to the predecessor statute that the Legislature "clearly viewed prolonged absences of members of municipal governing bodies with obvious disfavor and thereby sought to discourage an unbridled indulgence in them." *Id.* at 69, 436 *A.2d* 564. With regard to the Municipal Vacancy Law, "[t]he foremost guiding principle of this successor statute is that vacancies are to be filled as quickly as possible." *Id.*

The court concluded that accomplishing this legislative intent required that the office be deemed vacant upon the expiration "of the *earliest* eight week period." *Id.* (emphasis added). It therefore found that the eight week period should begin to run on the day after the mayor had last attended a meeting. Consequently, the court ruled that by operation of *N.J.S.A.* 40A:16–3(g), the mayor's office was vacant as a matter of law at the conclusion of the eight week period that began on the day after the date of the last meeting that had been attended.

This court declines to follow the formula for measurement of the eight week period set forth in the *Levin* decision. Although the desire to ensure that vacancies are filled as quickly as possible is the main priority apparent in the very limited legislative history of the Municipal Vacancy Law, this does not necessarily compel the conclusion that the operative date for the period to run is the day after the last meeting attended. Significantly, since it is the Legislature's intent that elected officials be present at meetings to serve the interests of their constituents, an official would not be in contravention of this goal until he or she has actually missed a meeting. Moreover, on the day following the last attended meeting, it is simply not known whether the next meeting will be attended or not, or indeed whether the meeting will in fact occur.

Further, the eight week period should not be triggered by an official's subjective knowledge that he or she will not be in attendance at the next meeting of the governing body.

For these reasons, I hold that the operative day on which the eight week period begins to run is the date of the first meeting in which the official fails to "attend and participate."[5] Here, the date of the first meeting which Fonseca did not attend was January 5, 1999. The consecutive eight week period would therefore conclude on March 2, 1999. Beginning the period on the date of the first missed meeting is consistent both with the language of N.J.S.A. 40A:16-3(g) as well as with the aim of ensuring that the needs of an elected official's constituency are being served.

■ The more fundamental issue, not addressed in any published opinion, requires a determination of what constitutes a "meeting" for purposes of the Municipal Vacancy Law.

Plaintiff submits that the court should look to the definition of "meeting" found in the Open Public Meetings Act, N.J.S.A. 10:4-8(b), which states that the term "does not mean or include any such gathering (1) attended by less than an effective majority of the members of a public body." Although the "Sunshine Law" carries a different purpose (insuring the public's right to be present and witness discussion, deliberation and decision making), its definition of meeting is helpful here in that it speaks to an event where "the members of the body present (intend) to discuss or act as a unit upon the specific public business of that body." N.J.S.A. 10:4-8b. Certainly, when cancellation occurs due to the absence of a quorum, such an event does not occur. The presence of a member of the body has no significance. "[D]eliberation, policy formulation, and decision making" cannot take place. N.J.S.A. 10:4-7.

---

[5] The language of the statute suggests that the eight week period would begin to run upon the failure of an official to attend and participate in any regular or special meeting of the governing body, as N.J.S.A. 40A:16-3(g) specifically refers to "any meetings of the governing body."

On the other hand, Fonseca and the Township urge that we look to *Robert's Rules of Order*, which provides that

[I]f a quorum fails to appear at a regular or properly called meeting the inability to transact business does not detract from the fact that the society's rules requiring the meeting to be held were complied with and the meeting was convened—even though it had to adjourn immediately. The Scott, Foresman, *Robert's Rules of Order*, Newly Revised, 1990 edition, p. 341.

Here, when the Council Vice President determined there would not be a sufficient number of members to constitute a quorum and therefore announced several hours in advance the cancellation of the meetings, there was nothing to convene at 8:00 p.m. Furthermore, there does not appear to be any council By–Law or Rule of Procedure that directs just what is to take place in such circumstances, if anything.

In the final analysis, the question raised in this case is answered by the language of *N.J.S.A.* 40A:16–3(g) itself. It is significant that the statute uses the phrase "attend and participate" in describing meetings. Common sense dictates that if a meeting is canceled, the effect is that there is then nothing in which to "attend and participate"; there is no "meeting" of the governing body which the member can participate in. It is urged that Fonseca should not be penalized by the unexpected cancellation of these meetings, as on each occasion he was present and thereby demonstrated responsible office holding. Indeed, in that respect he cannot be faulted. Such position, however, overlooks what the statutory scheme seeks to accomplish: attendance and participation of elected members of a governing body at its meetings which do take place, without unexcused absence, for as long as eight consecutive weeks.

The clear purpose of assuring the public its elected officials have not abandoned their interests but are faithfully and regularly attending to the business of the municipality would not be furthered by including in this context presence at meetings which are canceled. Rather, what the statute seeks to achieve is having elected officials present at meetings that *do* occur, unless otherwise excused.

Therefore, I hold that a meeting of a governing body that had been canceled due to, for example, lack of a quorum, is not an event contemplated by the Municipal Vacancy Law in its use of the term "meeting." Accordingly, Fonseca did not attend a "meeting" of the Township Council during the eight week period which concluded on March 2, 1999. His presence at one or more canceled meetings of the Council did not interrupt the running of the statutory period. As none of his absences had been excused, at the conclusion of the eight consecutive week period on March 2, 1999, his office of Ward 4 Councilperson became vacant by operation of law. *Levin, supra,* 181 *N.J.Super.* at 69–70, 436 *A.*2d 564 (stating that there is no need for action memorializing "an event that had already occurred by operation of law"); *accord, Errichetti v. Merlino,* 188 *N.J.Super.* 309, 330, 457 *A.*2d 476 (Law Div. 1982) (stating that cases arising under the Municipal Vacancy Law and its predecessor statute "confirm the automatic nature of the creation of the vacancy").

Representative government imposes a responsibility upon elected officials to give proper attention to the duties of their office, one of which is the regular attendance at and participation in the meetings of the body to which they have been elected. The public is entitled to know it is being represented and not neglected by those it has placed in office. The Municipal Vacancy Law creates a vacancy in the office when a member has neglected that duty and failed to attend meetings for a consecutive eight week period. Correspondingly, the member is charged with knowing of the meetings of the governing body, of his or her own absences, and of the requirements of the law.

Fonseca and the Township urge that this result could encourage manipulation of the law and allow the pretextual cancellation of meetings of governing bodies in an attempt to oust a member from office. There is no evidence of such nefarious purpose in this case. The testimony of the absent Council members shows each meeting was legitimately canceled due to the lack of a quorum.

Accordingly, the relief requested in the verified complaint is granted, and judgment will be entered declaring Mr. Fonseca's 4th Ward seat vacant as of March 2, 1999, the conclusion of eight consecutive weeks during which he failed to attend and participate in any meetings of the Council.